IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LERON WILBORN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 3:10-cv-423-DRH-DGW |
| ) | |
| DONALD GAETZ, ) | |
| ) | |
| Respondent. ) | |

## REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by Chief United States District Judge David R. Herndon pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) filed by Petitioner, Leron Wilborn, on June 10, 2010.  For the reasons set forth below, it is **RECOMMENDED** that Respondent Donald Gaetz be replaced by Randy Pfister,[1] that the Petition be **DENIED**, that this matter be **DISMISSED WITH PREJUDICE**, and that the Court adopt the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Petitioner, Leron Wilborn, was convicted of two counts of first degree murder in the May 16, 2005 stabbing deaths of his wife, Nicole Jacobs, and her friend, Wayne Dunnavant.  He was

---

[1] Respondent represents that Dave Rednour has replaced Donald Gaetz as the warden of Menard Correctional Center, where Petitioner was housed when the Petition was filed.  Petitioner has since been transferred to the Pontiac Correctional Center (Doc. 19).  Rule 2 of the Rules governing Section 2254 Cases states that "the petition must name as respondent the state officer who has custody."  It is therefore **RECOMMENDED** that Donald Gaetz be replaced by Randy Pfister, the acting warden of Pontiac Correctional Center.

sentenced to two consecutive life sentences on November 21, 2006 (Doc. 13-14, p. 285).

The record reveals that Petitioner was served with an order of protection issued by St. Clair County on May 12, 2005 which instructed him to stay 500 feet away from Jacobs and her residence (Doc. 13-1, p. 1;[2] Doc. 13-13, p. 148-150). Instead of heeding the order of protection, Petitioner went to Jacob's residence and stabbed her multiple times in the chest, abdomen, face, back, and arm and stabbed Dunnavant in the arm and abdomen, causing their death (Doc. 13-1, p. 2). Petitioner subsequently dumped the knife and a jacket in the vicinity of Jacob's residence and fled to Memphis, Tennessee (*Id.* at 3). He nonetheless turned himself in on May 25, 2005 and was returned to Belleville, Illinois where he stood trial and was ultimately convicted (*Id.*).

At trial, Petitioner testified that on the night of the stabbings, May 16, 2005, he arrived at Jacob's residence around 10:30 or 11:00 p.m. and sat outside her door drinking a beer and some wine and contemplating how he would reconcile with her after their latest argument (Doc. 13-13, p. 412-413, 419). He eventually knocked on the door and his wife opened it, allowing him to step into the house (*Id.* at 421). As they stood in the kitchen, where their conversation turned into an argument, a man approached from the front room and Jacobs asked Petitioner to leave (*Id.* at 425-427). Petitioner did not and "[a]ll of a sudden, the guy that came out the front room, he stood there and he said get the thing, get the thing" (*Id.* at 427). Jacobs then grabbed a towel by her hand and a knife, concealed in it, fell to the floor (*Id.* at 427-428). In the ensuing struggle to acquire the knife, Jacobs pulled Petitioner's jacket over his head, blinding him (*Id.* at 429-430). Petitioner nonetheless, acquired the knife and "start[ed] swinging the knife" in an attempt to defend himself and "keep them off me" (*Id.* at 432-433). Petitioner testified that: "I felt like I was

---

[2] The facts determined by the state court are presumed to be correct. 28 U.S.C. § 2254(e)(1); *Badelle v. Correll*, 452 F.3d 648, 659 (7th Cir. 2006).

defending myself because there was a weapon involved and my wife was trying to get that weapon with the – with the help of this other man that was in the house" (*Id.* at 430). Petitioner did not deny causing the wounds to Jacobs (*Id.* at 434). He went on to testify that "[i]f my wife had got her hands on that knife, her and Dunnavant was going to kill me. I deeply believe that" (Doc. 13-14, p. 2).

After his conviction, Petitioner filed a direct appeal with two arguments: that the trial court erred in failing to instruct the jury on involuntary manslaughter and that the trial court erred in sentencing Petitioner to two consecutive life sentences (Doc. 13-2). The Illinois Court of Appeals first found that the trial court did not abuse its discretion in failing to give an involuntary manslaughter instruction because the evidence showed that Petitioner did not act recklessly (Doc. 13-1, p. 6). In particular, the Court found that "theories of self-defense and recklessness are mutually inconsistent" (*Id.* at 7). The Court went on to hold, however, that Petitioner's sentences should run concurrently, not consecutively (*Id.* at 7). In his Petition for Leave to Appeal (PLA), Petitioner argued that the appellate court erred in finding that he did not act recklessly and in holding that a theory of self-defense would preclude an involuntary manslaughter instruction (Doc. 13-4). The Illinois Supreme Court denied the PLA on March 26, 2008. *People v. Wilborn*, 888 N.E.2d 1188 (Table) (Ill. 2008).

In a post-conviction petition filed on June 5, 2008, Petitioner raised numerous grounds:

1. Trial counsel provided ineffective assistance of counsel by failing to obtain an expert who would testify as to alleged tampering of the evidence (specifically the bodies of decedents) (Doc. 13-6,p. 3).

2. Appellate counsel provided ineffective assistance of counsel for failing to raise ground 1 above (*Id.* at 4).

3

    3. Trial counsel provided ineffective assistance of counsel by failing to advise Petitioner of the inability to pursue both an involuntary manslaughter instruction and a self-defense instruction (*Id.* at 5).

    4. Trial counsel provided ineffective assistance of counsel by advising against a second degree murder instruction (*Id.* at 6).

This petition was denied by the trial court on June 9, 2008 (Doc. 13-10, p. 2). On appeal, Petitioner argued that the trial court erred in summarily dismissing his post-conviction petition and in holding him to the *Strickland v. Washington*, 466 U.S. 668 (1984), standard during the first stage of the post-conviction proceedings (*Id.* at 3). In its October 26, 2009 Order, the Illinois Court of Appeals found that the trial court was unclear on which standard it employed in dismissing the post-conviction petition (*Id.* at 5). Instead of remanding the matter, however, the Court of Appeals itself examined whether the petition should be dismissed for failing to "state the gist of a constitutional claim" (*Id.*).

    As to the evidence tampering claim, the Court found that there was no evidence of police tampering and that Petitioner failed to present any such evidence to the trial court (in his post-conviction petition) (*Id.* at 9). Thus, Petitioner's ineffectiveness claims (both trial and appellate) with respect to this issue failed to state the gist of a constitutional claim (*Id.* at 9). As to the involuntary manslaughter instruction claim, the Court of Appeals found that Petitioner's trial counsel did attempt to introduce an involuntary manslaughter instruction but that the instruction was rejected because it was not supported by the evidence (*Id.* at 11). Further, the Court held that trial counsel was not ineffective in selecting a self-defense theory of the case in light of Petitioner's testimony and a video-taped confession that he was acting in self-defense. Finally, the Court found that the record contradicted Petitioner's claim that his trial counsel advised against a second degree murder instruction – instead, the record reflected that Petitioner himself rejected the

instruction (*Id.* at 13). The trial court's dismissal of the petition was thus affirmed.

In a PLA, Petitioner states the Illinois Court of Appeals erred in analyzing his ineffective assistance of counsel argument (with respect to tampered evidence) by failing to consider the autopsy reports of the decedents. He also states that he was unable to acquire an affidavit from his attorney that would have shown that his attorney was aware of tampered evidence. The PLA was denied by the Supreme Court of Illinois on January 27, 2010. *People v. Wilborn*, 924 N.E.2d 460 (Table) (Ill. 2010).

Before this Court, Petitioner lists three counts of relief:

1. Trial counsel provided ineffective assistance of counsel by failing to investigate and to hire an expert to pursue a claim of evidence tampering with respect to the bodies of the decedents.
2. The trial court erred in failing to instruct the jury on involuntary manslaughter.
3. Appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness as to Count 1, for failing to raise an argument with respect to crime scene contamination, and for failing to argue that the trial court erred with respect to Count 2.

Respondent answers that both Counts 1 and 3 are procedurally barred and that Count 2 is not a cognizable claim.

### CONCLUSIONS OF LAW

Title 28 U.S.C. §2254 provides that the Court shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of the State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Accordingly, "[f]ederal courts can grant habeas relief only when there is a violation of

5

federal statutory or constitutional law." *United States ex rel. Lee v. Flannigan*, 884 F.2d 945, 952 (7th Cir. 1989). Before seeking such relief, a petitioner is required to exhaust available state remedies. 28 U.S.C. § 2254(b)(1); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

**Counts 1 and 3**

Respondent argues that these claims are procedurally defaulted because Petitioner failed to raise them in one complete round of state review. As to Count 1, Respondent argues that Petitioner raised this claim in his post-conviction petition before the trial court but failed to raise the claim in his appeal to the Illinois Court of Appeals – instead he opted merely to raise a claim that the trial court erred in its summary dismissal of his claims. As to Count 3, Respondent argues that Petitioner similarly failed to appeal the claim regarding appellate counsel's failure to raise trial counsel's ineffectiveness as to evidence tampering. Respondent also notes that Petitioner did not make the claim that appellate counsel was ineffective for failing to raise the issue of crime scene contamination or the trial court's failure to give the involuntary manslaughter instruction.[3] Alternatively, Respondent argues that these claims were decided on an independent state law ground.

Prior to reaching the merits of a claim, the exhaustion requirement requires that Petitioner "fairly present his federal claims to the state courts by arguing both the law and the facts underlying them." *Byers v. Basinger*, 610 F.3d 980, 985 (7th Cir. 2010). Fair presentment requires that Petitioner "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In asserting an ineffective assistance of

---

[3] This claim was in fact made by appellate counsel (Doc. 13-2, p. 2).

counsel argument, Petitioner is also required to raise each "specific ground for ineffectiveness." *Everett v. Barnett*, 162 F.3d 498, 502 (7th Cir. 1998).

In his brief before the trial court, Petitioner made the argument that trial counsel failed to "call/obtain an expert crime scene investigator as a witness" (Doc. 13-6, p. 3). In his brief on appeal (Doc. 13-7), Petitioner based his arguments on errors of the trial court: that the trial court used the wrong state statutory standard in evaluating his claims. While Petitioner nominally cited to *Strickland v. Washington*, each argument and citation in the brief was to state law and in particular, Illinois' Post-Conviction Hearing Act, 725 ILL. COMP. STAT. § 5.122-1, *et seq.* The brief makes no argument as to the underlying claim that Petitioner's trial counsel was ineffective for failing to either investigate or call an expert regarding evidence tampering, or that appellate counsel was ineffective for raising this claim. Therefore, Petitioner failed to raise each specific ground for relief in one complete round of state court review.

The Illinois Court of Appeals, however, considered Petitioner's ineffectiveness claims, with respect to the failure to present an expert witness as to evidence tampering,[4] *de novo* and determined that they failed to state the gist of a constitutional claim. In particular, the Court stated that Petitioner failed to present any evidence of police tampering, that Illinois' Post-Conviction Hearing Act, 725 ILL. COMP. STAT. §5/122-2, "requires that some factual

---

[4] The claim that trial counsel was ineffective for failing to investigate evidence tampering was not addressed by the Illinois Court of Appeals. Before this Court, Petitioner claims that trial counsel was ineffective for failing to "investigate highly probable exculpatory evidence of crime scene contamination or hire an expert to do same . . ." (Doc. 1, p. 9). The claim before the state courts was merely that "counsel failed to call/obtain an expert crime scene investigator as a witness" (Doc. 13-6, p. 3). There is a significant difference between failing to investigate exculpatory evidence and failing to present such evidence to a jury. Petitioner's claim that counsel was ineffective for failing to investigate is procedurally defaulted because it never was claimed before the state courts.

documentation which support the allegations be attached to the petition," and that the "failure to do so is fatal to the petition and justifies a summary dismissal by the trial court." (Doc. 13-10, p. 8).

Federal Courts "will not review a question of federal law decided by a state court if the decision of that court rest on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729-730 (1991); *Lee v. Kemna*, 534 U.S. 362, 375 (2002). A state law ground is independent "when the court actually relied on the procedural bar as an independent basis for its disposition of the case" and it is adequate "when it is a firmly established and regularly followed state practice at the time it is applied." *Kaxzmarek v. Rednour*, 627 F.3d 586, 591-592 (7th Cir. 2010). Illinois' statutory requirement that a post-conviction petition contain evidence to support a claim is an adequate and independent state law ground that would preclude federal review. *Thompkins v. Pfister*, 698 F.3d 976, 986-987 (7th Cir. 2012). In this case, the Illinois Court of Appeals specifically found that Petitioner's failure to comply with Illinois' Post-conviction Hearing Act was fatal to his claims that trial counsel and appellate counsel were ineffective with respect to the claim of evidence tampering. These claims, therefore, are procedurally defaulted.[5]

**Count 2**

With respect to Count 2, Petitioner claims that his constitutional rights to a fair trial and due process were violated when the trial court refused to instruct the jury on involuntary manslaughter. In his petitions before the state courts, Petitioner argued that the trial court "abused its discretion" in refusing to instruct on involuntary manslaughter but did not specifically

---

[5] Petitioner has not presented any cause or prejudice that would excuse this default. *Lewis v. Sternes*, 390 F.1019, 1026 (7th Cir. 2004).

8

argue that his constitutional rights were violated by the refusal. Petitioner did, however, cite to a state court decision, *People v Everette*, 565 N.E.2d 1295 (Ill. 1990), in which the Illinois Supreme Court discussed federal law, notably *Mathews v. United States*, 485 U.S. 58 (1988), which holds that a defendant is entitled to a lesser included offense instruction for which there exists sufficient evidence. *Mathews*, 485 U.S. at 63; *see also Keeble v. United States*, 412 U.S. 205, 208 (1973). In order to fairly present a federal claim, the burden on Petitioner is not onerous, he merely need label an argument as being a federal claim or cite to some federal authority to support his claim. *Baldwin*, 541 U.S. at 32. In this matter, while Petitioner may have cited to a case that cited to federal law, he did not frame his argument as implicating federal constitutional or statutory law. The states courts, therefore did not address any federal claim with respect to the omission of an involuntary manslaughter instruction.[6]

In any event, this claim is without merit. In *Beck v. Alabama*, 447 U.S. 625 (1980), the Supreme Court held that, in a capital case, the Due Process Clause of the 14th Amendment requires a state court to include a lesser included offense instruction where it is warranted by the evidence. *Id.* at 638 The Court went on to say, however, "[w]e need not and do not decide whether the Due Process Clause would require the giving of such an instruction in a noncapital case." *Id.* at n.14. In *Calloway v. Montgomery*, 512 F.3d 940 (7th Cir. 2008), the Seventh Circuit specifically found that there was no clearly established Supreme Court precedent on whether a criminal defendant is entitled to a lesser offense instruction in order for the conviction to

---

[6] Because the state court never considered such an argument, Petitioner cannot now argue that it made an "unreasonable determination of the facts in light of the evidence." 28 U.S.C. §2254(d)(2). To prevail on such an argument, Petitioner would have to show that "the state court correctly identifie[d] the governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

9

comport with Due Process. *Id.*at 944. Thus, Petitioner cannot claim that the state courts' decision was "contrary to or involved an unreasonable application of, clearly establish Federal law, as determined by the Supreme Court of the United States" because there is no clearly established federal law that Petitioner is entitled to a jury instruction on a lesser included offense. 28 U.S.C. § 2254(d)(1). Petitioner failed to raise arguments based on federal law in his briefs before the state court and it is not clearly established federal law that he is entitled to a jury instruction on involuntary manslaughter. Therefore, this claim must fail.

**Certificate of Appealability**

Respondent's final argument is that a certificate of appealablity should not issue in this case. Title 28 United States Code § 2253(c)(2) provides that a certificate should only issue if there is a "substantial showing of the denial of a constitutional right." Petitioner has failed to make a substantial showing of the denial of a constitutional right because reasonable jurists would not debate as whether the petition should be resolved in a different manner. *Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000). As to the underlying claims of ineffective assistance of trial counsel, this Court would note that the state courts found that there was no evidence of tampering and that Petitioner's claims were based on speculation and conjecture. In Petitioner's PLA before Illinois Supreme Court (on post-conviction appeal), he does point out that various statements in autopsy reports could only lead to the conclusion that the bodies were tampered with by Belleville Police in an attempt to acquire sufficient evidence to arrest Petitioner. The statements in the autopsy report are at best ambiguous descriptions of the bodies and Petitioner's theory as to motive is weak in light of the other evidence acquired by the police, including Petitioner's own confession. With respect to Petitioner's additional claim regarding the involuntary manslaughter

10

instructions, he has failed to show that he was deprived any constitutional right. This Court further finds that reasonable jurists could not differ as to whether Petitioner has defaulted on his claims. Therefore, this Court recommends that Petitioner should not be encouraged further.

### RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that Respondent Donald Gaetz be replaced by Randy Pfister, that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED**, that this matter be **DISMISSED WITH PREJUDICE**, and that the Court adopt the foregoing findings of fact and conclusions of law.

Once the District Court makes a final decision and if it is adverse to Petitioner, this Court further **RECOMMENDS** that a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: December 10, 2012**

                                              **DONALD G. WILKERSON**
                                              **United States Magistrate Judge**