### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

**LERON WILBORN,**

        **Petitioner,**

**vs.**                      **No.  10-0423-DRH**

**RANDY PFISTER,**

        **Respondent.**

### MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

### Introduction and Background

Pending before the Court is a Report and Recommendation issued by Magistrate Judge Donald G. Wilkerson (Doc. 20).  Wilborn filed objections to the Report (Doc. 37).  Based on the record and the applicable case law, the Court **ADOPTS** the Report in its entirety.

In 2006, Wilborn was convicted after a jury trial in the St. Clair County, Illinois Circuit Court of two-counts of first degree murder.  Wilborn was convicted of stabbing to death his wife, Nicole Jacobs, and her friend, Wayne Dunnavant, in Jacobs' apartment in Belleville, Illinois.  On November 26, 2006, the St. Clair County, Illinois Circuit Court sentenced him to two consecutive life sentences.

The facts set forth below are taken from the state court proceedings and are presumed to be correct. 28 U.S.C. § 2254(e)(1); *Badelle v. Correll*, 452 F.3d 648, 659 (7th Cir. 2006).

On May 12, 2005, Nicole Jacobs obtained an order of protection in St. Clair County. This order was served on the defendant, Leron Wilborn, on May 16, 2005, by Sergeant David Thorton of the St. Clair County sheriff's department. When Thorton served the defendant, he explained to the defendant that he was to stay 500 feet away from his wife, Nicole Jacobs, and her residence located at 21 East C Street, Apartment F, Belleville, Illinois. On the following day, May 17, 2005, Keith Edwards, a downstairs neighbor, found Nicole Jacobs and Wayne Dunnavant dead in Jacobs' apartment. Edwards called 9-1-1.

…

Twanda Wilson, Jacobs' sister, also testified that she had spoken with the defendant a few weeks prior to the murder of her sister. The defendant told Wilson that if he could not have Jacobs, then nobody could and that if he caught Jacobs with another man, he would kill them both.

The defendant testified at the trial that he went to Jacobs' apartment to try to "patch things up." Before reaching her residence, the defendant stopped at two stores and purchased alcoholic beverages. Once at the residence, the defendant waited outside, drinking a can of beer and a bottle of wine. The defendant then knocked on the door and went inside. The defendant testified that Jacobs stopped in the kitchen and rested her left hand on a white folded towel on the countertop while she spoke to him. As they spoke and began to argue, Dunnavant entered the kitchen area from the front room. The defendant testified that Dunnavant told Jacobs to "get the thing, get it." At this point, the defendant claimed, Jacobs grabbed the white towel, which concealed a knife. The knife fell out of the towel and hit the floor. The defendant further testified that he began fighting for the knife and that Jacobs pulled his jacket over his head. The defendant claimed that not being able to see anything, he heard footsteps. While blinded, he found the knife in his hands and began defending himself by swinging the knife. He testified that he did not recall striking anyone with the knife. When the defendant's jacket was removed from his eyes, he saw Dunnavant holding his arm and heading toward the front room. Afraid that Dunnavant was retrieving a weapon, the defendant ran out of the house. He testified that once outside he dropped the knife and jacket and did not call anyone for help.

The defendant fled to Memphis, Tennessee. On May 25, 2005, the defendant telephoned from Memphis to turn himself into the police. Belleville police officers traveled to Memphis to take

defendant into custody.  While in Memphis, the police conducted a videotaped interview with the defendant, which was admitted into evidence at trial.  In this interview, the defendant told police that he "just could not believe it" when he saw another man in the apartment.  He also told police that after seeing Dunnavant in Jacobs' apartment he, he started to argue with Jacobs.  Jacobs tried to reach for something, grabbed the defendant's jacket, and pushed him.  He then told police that "everything went blank" and that he did not remember what he had done to his wife.  The defendant also told officers that a knife was on the cabinet and that he "had to" cut his wife and the man and that he "lost [his] mind."

The defendant tendered an instruction on involuntary manslaughter, which the circuit court refused.  The jury found the defendant guilty on both counts of first-degree murder.  The court sentenced the defendant to two consecutive life sentences. …

Doc. 13-1; *People v. Wilborn*, 05-07-0029 (Ill. App. Dec. 20, 2007)(Rule 23 Order).  The Appellate Court affirmed Wilborn's conviction (rejected Wilborn's argument that the trial court erred in refusing to instruct the jury on involuntary manslaughter) and modified his sentence to concurrent natural-life sentences. *Id*.[1]  Thereafter, Wilborn filed a petition for leave to appeal ("PLA") to the Illinois Supreme Court and raised the same issues regarding the involuntary manslaughter jury instruction.  Doc. 13-4; PLA, *People v. Wilborn*, No. 105881.  The Illinois Supreme Court denied the PLA on March 26, 2008.  Doc. 13-5; *People v. Wilborn*, No. 105881.

In Wilborn's June 5, 2008 post-conviction petition, Wilborn raised the following claims: that defense counsel was ineffective for failing to call/obtain an expert crime scene investigator as a witness who would testify as to alleged

---

[1] Wilborn also argued on appeal that the trial court erred in sentencing defendant to consecutive life sentences.

tampering of the evidence by the police, namely the bodies of the decedents; that appellate counsel was ineffective for failing to raise the above argument on appeal; trial counsel was ineffective for failing to advise Wilborn of the inability to pursue both an involuntary manslaughter instruction and self-defense instruction; and that trial counsel was ineffective by advising against a second degree murder instruction. Doc. 13-6; *People v. Wilborn*, 05-CF-832 (June 5, 2008). The circuit court summarily denied Wilborn's post-conviction petition. Doc. 13-10, p. 2; *People v. Wilborn*, 05-08-0334 (Ill. App. October 26, 2009)(Rule 23 Order). Wilborn appealed this decision arguing that the trial court erred in summarily dismissing his post-conviction petition and in holding him to the *Strickland v. Washington*, 466 U.S. 668 (1984), standard during the first stage of a post-conviction proceedings. *Id*.

In its Rule 23 Order, the Appellate Court affirmed the circuit court's dismissal of the petition after a *de novo* review of the record. It found that there was no evidence of police tampering and that petitioner failed to present any evidence supporting these claims to the trial court in his post-conviction petition. Thus, the Appellate Court found that his ineffective assistance of counsel claims, both trial and appellate, failed to state the gist of a constitutional claim. Further, the Appellate Court found that petitioner's trial counsel did attempt to introduce an involuntary manslaughter jury instruction but that the circuit court denied the instruction as not supported by the evidence. Also, the Appellate Court held that trial counsel was not ineffective in selecting a self-defense theory of the case in

light of Wilborn's testimony and video-taped confession that he was acting in self-defense.  Lastly, the Appellate Court found that the record contradicted Wilborn's claim that his trial counsel advised against a second-degree murder instruction. *Id.*

Wilborn filed a PLA, arguing that the Appellate Court erred in analyzing his ineffective assistance of counsel argument as to the witness tampering claims by failing to consider the autopsy reports and that he was unable to acquire an affidavit from his attorney that would have shown that his attorney was aware of the tampered evidence.  On January 27, 2010, the Illinois Supreme Court denied the PLA. *People v. Wilborn*, 924 N.E.2d 460 (Table) (Ill. 2010).

On June 10, 2010, Wilborn filed this 28 U.S.C. § 2254 petition (Doc. 1). Wilborn raises three claims:

(1) trial counsel was ineffective for failing to investigate evidence of crime scene contamination and failing to hire an expert who could investigate and testify about contamination;

(2) the trial court erred in failing to instruct the jury on involuntary manslaughter; and

(3) direct appeal counsel was ineffective for failing to raise claims (1) and (2) on direct appeal.

Thereafter, Magistrate Judge Donald G Wilkerson issued a Report and Recommendation ("the Report") (Doc. 20).  The Report recommends that the Court deny and dismiss with prejudice Wilborn's habeas corpus petition. Specifically, the Report recommends that claims 1 and 3 should be denied because they are procedurally defaulted and that claim 2 should be denied as this claim fails because there is no clearly established federal law that he is entitled to

a jury instruction on involuntary manslaughter.  Wilborn filed objections to the Report (Doc. 37).

Since objections have been filed, this Court must undertake *de novo* review of the Report. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Southern District of Illinois Local Rule 73.1(b); *Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992).  The Court may "accept, reject or modify the recommended decision." *Willis v. Caterpillar Inc.*, 199 F.3d 902, 904 (7th Cir. 1999).  In making this determination, the Court must look at all the evidence contained in the record and give fresh consideration to those issues to which specific objection has been made.  *Id.*

### Analysis

The Anti-Terrorism and Death Penalty Act of 1996 ("AEDPA") allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Before considering the merits of a habeas petition, a federal court must ensure that the petitioner has exhausted all available state remedies and fairly presented all of the claims in his habeas petition to the state courts.  *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004); *Spreitzer v. Schomig*, 219 **F.3d** 639, 644 (7th Cir. 2000).

Prior to reaching the merits of a claim, the exhaustion requirement requires that a petitioner "fairly present his federal claims to the state courts by arguing

both the law and the facts underlying them." *Byers v. Basinger*, 610 F.3d 980, 985 (7th Cir. 2010).  Fair presentment requires that the petitioner "give the state courts one full opportunity to resolve any constitutional issues by invoking one round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  In asserting ineffective assistance of counsel arguments, petitioner is also required to raise each specific ground for ineffectiveness.  *Everett v. Barnett*, 162 F.3d 498, 502 (7th Cir. 1998).

Furthermore, federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  *Coleman v. Thompson*, 501 U.S. 722, 729-730 (1991); *Lee v. Kemma*, 534 U.S. 362, 375 (2002).  A state law ground is independent "when the court actually relied on the procedural bar as an independent basis for its disposition of the case" and it is adequate "when it is a firmly established and regularly followed state practice at the time it is applied."  *Kazxmarek v. Rednour*, 627 F.3d 586, 591-592 (7th Cir. 2010).  Illinois' statutory requirement that a post-conviction petition contain evidence to support a claim is an adequate and independent state law ground that would preclude federal review. *Thompkins v. Pfister*, 698 F.3d 976, 986-87 (7th Cir. 2012).

First, the Court denies Wilborn's request for an evidentiary hearing that is contained in the objections.  The Court concludes that an evidentiary hearing is not necessary under the circumstances.  Further, the Court notes that Wilborn

filed what the Court considers to be general objections to the Report.

As to claims 1 and 3, Wilborn objects to the Report arguing that the Report "totally omit [sic] the fact that the petitioner asserted the claim of ineffective assistance of trial counsel and ineffective assistance of direct appellate counsel before the trial court and that court fail[sic] to decide those claims on its merits prior to appeal postconviction. This omission by the Magistrate reveal some degree of judicial bias on the part of the Magistrate."

The Court rejects Wilborn's objections.  First, the Report does not reveal any judicial bias by Magistrate Judge Wilkerson and Wilborn does not present anything to support such a claim.  Moreover, the record does not reveal that Wilborn's Appellate brief made arguments as to claim 1, that his trial counsel was ineffective for failing to investigate or call an expert regarding the evidence tampering or made arguments as to the claim that his appellate counsel was ineffective for raising this claim.  Wilborn raised claim 1 to the post-conviction trial court and the Illinois Supreme Court; he did not raise this argument in the Appellate Court.  As to claim 3, Wilborn did not argue in *any* state court that his direct appellate counsel was ineffective for failing to raise the jury instruction issue and Wilborn did not argue in either the Appellate Court or the Illinois Supreme Court that that the failure to raise trial counsel's ineffectiveness relating to investigating the crime scene contamination; this claim was only raised in his post-conviction petition in the trial court.  Thus, the record reveals that he failed to raise claims 1 and 3 in one complete round of state court review. *O'Sullivan v.*

*Boerckel*, 526 U.S. at 845 (petitioner must fairly present is claim in each appropriate state court on one complete round of the State's established appeals process).   Further, the Appellate Court specifically found that petitioner's failure to comply with Illinois' Post-conviction hearing Act was fatal to his claims that trial counsel and appellate counsel were ineffective with respect to the claims of evidence tampering.   The record also establishes that Wilborn did not present any cause or prejudice that would excuse the procedural default.   The Court agrees with the Report's conclusion that the claims 1 and 3 are procedurally defaulted.

Lastly, Wilborn did not file a specific objection to claim 2, that the trial court erred in refusing to instruct the jury on the lesser-included offense of involuntary manslaughter.   He did not address or cite to case law to refute the Report's conclusion.   He merely argues that Court should issue a certificate of appealabilty as to all his claims (Doc. 37, p. 6).   Local Rule 73.1(b) provides that written objections "shall specifically identify the portions of the  .  .  . recommendations or reports to which objection is made and the basis for such objections."   His "objections" as to these claim falls short of what is required under 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b).   *See Esposito v. Piatrowski*, 223 F.3d 497, 502 (7th Cir. 2000).   Therefore, pursuant to 28 U.S.C. § 636(b)(1), the Court need not conduct *de novo* review of the general objections.   *Thomas v. Arn*, 474 U.S. 140 (1985).   After reviewing the record as to this claim, the Court finds that the Report's conclusion as to this claim is correct and the Court Adopts the Report's recommendation that this claim must fail and the Court denies

Wilborn's petition for habeas corpus as to this ground.

When the Court enters a final Order adverse to the applicant for relief under § 2254, the Court must also issue or deny a certificate of appealability. Rule 11 of the Rules Governing Section 2254 Cases.  A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right.    28 U.S.C. § 2253(c)(2).    The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (internal quotations omitted)(citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n. 4 (1983)).  If the Court issues a certificate of appealability, it must indicate on which specific issue or issues the petitioner has satisfied the "substantial showing" requirement.    28 U.S.C. § 2253(c)(3).

Here, the Court concludes that no certificate of appealability shall issue. Petitioner has not made a substantial showing of the denial of a constitutional right. The conclusory allegations of his petition are belied by the evidence contained in the record.  Moreover, he has failed to show that he was deprived any constitutional right.  Further, the Court finds that reasonable jurists could not differ as to whether petitioner has defaulted on his claims.

## Conclusion

Accordingly, the Court **ADOPTS** the Report in its entirety (Doc. 20).  The Court **DENIES** and **DISMISSES with prejudice** Wilborn's 28 U.S.C. § 2254

petition.  Further, the Court **DECLINES** to issue a certificate of appealabilty.  The

Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same.

**IT IS SO ORDERED.**

Signed this 15th day of January, 2014.

Digitally signed by
David R. Herndon
Date: 2014.01.15
15:04:45 -06'00'

**Chief Judge**
**United States District Court**